WHETHER THE UNITED STATES SENTENCING GUIDELINES ARE
FACIALLY UNCONSTITUTIONAL IN LIGHT OF RING V. ARIZONA
WHERE IT REQUIRES THE COURT TO FIND THE EXISTENCE OF
THE FACT THAT AN AGGRAVATING FACTOR EXISTS

REVIEW:

Because this claim for review was not preserved below, this Court's consideration is for "plain-error." See, F.R.Crim.P. 52(b). Accord, Laboy-Delgado, 84 F.3d 22, 31 (1st Cir.1996). Alternatively, other federal courts of appeals have allowed a party to attack the constitutionality of a statute for the first time on appeal.* See, e.g., U.S. v. Tabacca, 924 F.2d 906, 912 (9th Cir.1991); U.S. v. Easter, 981 F.2d 1549, 1557 (10th Cir.1992)(claim that federal statute is unconstitutionally vague for failing to define cocaine base considered when raised for first time on appeal). Also, Torres claims that Ring v. Arizona, 122 S.Ct. 2428 (2002), introduced an intervening change in law that was previously unavailable. "When the source of the alleged error is a supervening judicial decision that alters 'a settled rule of law in the circuit,' ... we apply a "modified plain error rule" in which the government bears the burden of persuasion [...]." U.S. v. Santiago, 238 F.3d 213, 215 (2d Cir.2001); see also U.S. v. Novey, 922 F.2d 624, 629 (10th Cir.1991).

Torres claims that the United States Sentencing Guidelines are facially unconstitutional in light of Ring v. Arizona, 122 S.Ct. 2428, where it requires the court to find the existence of the fact that an aggravating factor exists. In Ring, the Supreme Court held that, "Capital defendants, no less than noncapital defendants, ... are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punish-

---

* Thus, it was error for Petitioner's counsel not to address this claim on direct appeal.

15

ment." Id., at 153 L.Ed 2d at 564.  "Because Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense,' the Sixth Amendment requires that they be found by a jury." Ring, 153 L.Ed 2d at 577.

Accordingly, in mounting a facial challenge to a legislative act, the challenger must establish that no set of circumstances exist under which the act would be valid.  See, Rust v. Sullivan, 500 U.S. 173, 114 L.Ed 2d 232 (1991). "'The fact that [the regulations] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render [them] wholly invalid.'"  Id., at 114 L.Ed 2d at 249, quoting United States v. Salerno, 481 U.S. 739, 745 (1987).  Therefore, Torres limits his challenge to the facts of his case.

Necessarily, we begin this inquiry with the plain language of the statute. See, United States v. Turkette, 452 U.S. 576, 580 (1981).  Section 991, of Title 28, provides:

> (b)  The purposes of the United States Sentencing Commission are to —
>
> (1) establish sentencing policies and practices for the Federal criminal justice system that—
>
> (A) assure the meeting of the purposes of sentencing set forth in section 3553(a)(2) of title 18, United States Code;

Section 3553, of Title 18, provides:

> (a)  The court shall impose a sentence sufficient , but not greater than necessary to comply with the purpose set forth in paragraph (2) of this subsection.

Subsection (b) of section 3553, provides:

> **Application of guidelines in imposing a sentence**—The court shall impose a sentence of the kind , and within the range, referred to in sub-

section (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission [...].

Subsection (a)(4) of section 3553 provides:

[T]he kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28 [...].

As can be easily determined, the above plain language of the subject statutes command the federal court to apply the Sentencing Guidelines when imposing sentence. See also, 18 U.S.C. § 3551(a)(b). If the language of a statute is plain and unambiguous, court's inquiry ends. See, U.S. v. Weaver, 275 F.3d 1320 (11th Cir.2001); see also U.S. v. Barnes, 295 F.3d 1354 (D.C.Cir.2002).

Next, we turn to the sentencing provisions under the Sentencing Guidelines, namely, USSG § 2D1.1(a)(3), § 3B1.1(c). "We interpret United States Sentencing Guidelines the same way we interpret statutes, 'using terms' meaning in ordinary usage.'" U.S. v. Jenkins, 275 F.3d 283, 287 (3d Cir.2001), quoting U.S. v. Loney, 219 F.3d 281 (3d Cir.2000). Accord, Wiliams v. United States, 503 U.S. 193 (1992)(interpreting statute and guidelines). "As with statutory construction, we think the plain and unambiguous language of the sentencing guideline affords the best recourse for their proper interpretation." U.S. v. Newman, 982 F.2d 665, 673 (1st Cir.1992). See also, U.S. v. Josleyn, 99 F.3d 1182, 1198 (1st Cir.1996)(acknowledging that in applying § 3B1.3 enhancement, court need only apply the pertinent guidelines language).

Accordingly, § 1B1.1, provides:

(a) Determine, pursuant to § 1B1.2, the offense guideline section from Chapter Two applicable to the offense of conviction.

17

The Commentary to § 1B1.1, provides:

> (k) "Offense" means the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct)

Id., at USSG § 1B1.1, comment. (n.1). See, <u>Stinson v. United States</u>, 508 U.S. 36 (1993)(The commentary to the Guidelines are considered binding authority on this Court unless either violative of the Constitution or a federal statute). Accord, <u>U.S. v. Gonzalez-Alvarez</u>, 277 F.3d 73, 77 n.4 (1st Cir.2002).

Section 1B1.2, provides:

> (b) After determining the appropriate offense guideline section pursuant to subsection (a) of this section, determine the applicable guideline range in accordance with § 1B1.3 (Relevant Conduct).

Section 1B1.3, provides:

> (a) Unless otherwise specified, the base offense level ... shall be determined on the basis of the following:
>
> (1) (A) all acts and omissions committed, aided, abetted, counseled, ... or willfully caused by the defendant;

The Commentary to §1B1.3, provides:

> Under subsection (a)(1) and (a)(2), the focus is on the specific acts and omissions for which the defendant **is to be held accountable** in determining the applicable guideline range, rather than on whether the defendant is criminally liable for an offense as a principal, accomplice, or conspirator.
>
> For example, the defendant sells 30 grams of cocaine ( a violation of 21 U.S.C. § 841) on one occasion and, as part of the same course of conduct... attempts to sell an additional 15 grams of cocaine (a violation of 21 USC § 846) on another occasion. The defendant is convicted of one count charging the completed sale of 30 grams of cocaine. The two offenses, although covered by different statutory provisions, are of a character for which § 3D1.2(a) would require the grouping of counts, had the defendant been convicted of both counts. Therefore, subsection (a)(2) applies and the total amount of cocaine (45 grams) involved is used to determine the offense level.

Id., at USSG § 1B1.3, comment. (n.1, 3)(emphasis added). See, <u>U.S. v. Howard</u>,

235 F.3d 366, 373 (8th Cir.2000)([T]he focus is on the specific acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range), quoting §1B1.3, comment. (n.1)(internal quotation marks omitted); see also U.S. v. Chandler, 125 F.3d 892, 897 (5th Cir.1997)(Pursuant to § 1B1.3, the base offense level [is] determined based upon defendant's relevant conduct).

Because the instant offense is for a violation of 21 U.S.C. § 841(a)(1) & § 846, the court is instructed to apply § 2D1.1, as it is the offense guideline most applicable to the offense of conviction. See, USSG § 2D1.1(a)(3). Section 2D1.1, provides:

> UNLAWFUL MANUFACTURING, IMPORTING, EXPORTING, OR TRAFFICKING: ATTEMPT OR CONSPIRACY
>
> (a)  Base Offense Level (Apply the greatest):
>
> > (3) the offense level specified in the Drug Quantity Table set forth in subsection (c) below.

In the instant case, there was no drug quantity specified in Torres's indictment, therefore, under such circumstances, the court is commanded to estimate the amount of drugs involved in the offense. This contention is confirmed by the Commentary to § 2D1.1, as well as § 1B1.3, supra. The Commentary to § 2D1.1, provides:

> Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. See § 1B1.3 (Relevant Conduct). Where there is no drug seizure or the amount seized does not reflect the scale of the offense, **the court shall** approximate the quantity of the controlled substance.

Id., at USSG § 2D1.1, comment. (n.12), See also, U.S. v. Blount, 291 F.3d 201, 215 (2d Cir.2002)(Where the quantity seized does not reflect the scale of the offense, the Guidelines require the district court to estimate the amount of

19

drugs involved in the offense), citing § 2D1.1, application Note 12. Accord, U.S. v. Becker, 230 F.3d 1224, 1234 (10th Cir.2000); U.S. v. Causor-Serrato, 234 F.3d 384, 390 (8th Cir.2000); U.S. v. Barnes, 244 F.3d 172, 177 (1st Cir. 2001).

It can not be disputed that the Guidelines require the court to find the estimate quantity of drugs when determining a defendant's base offense level. Equally, it cannot be disputed that this finding is not a fact reflected in the jury's guilty verdict, as commanded by Ring. "The significance of this finding relates to the calculation of the [defendant's] guideline sentencing range. The quantity of drugs in the offense is a **key integer** used in determining an offender's base offense level." Barnes, 244 F.3d, at 176-177 n.4 (emphasis added).

Turning the focus of inquiry to § 3B1.1, the court is again required to make this specific finding. "This Part provides adjustments to the offense level based upon the role the defendant played in committing the offense." USSG Ch.3, Pt.B, intro. comment. Section 3B1.1, provides:
> Based on the defendant's role in the offense, increase the offense level as follows:
> (c)  If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by **2 levels**.

See, U.S. v. Bell, 28 F.3d 615, 617 (7th Cir.1994)(The finding of an aggravated role under § 3B1.1 involves a question of fact). For reasons too obvious to require further elaboration, it is beyond question that both § 2D1.1 and § 3B1.1, requires the court to find the existence of the fact that **these** aggravating factors existed. And there can be no question as to the mandatory authority of of the Sentencing Guidelines. "The answer to any suggestion that the statutory

character of a specific penalty provision gives it primacy over administrative sentencing guidelines is that the mandate to apply the Guidelines is itself statutory. See 18 USC § 3553(b)." United States v. R.L.C., 503 U.S. 291, 117 L.Ed 2d at 567.

The aggravating factors at issue here, as in Walton, are "not merely circumstances for consideration by the trial judge in exercising sentencing discretion within a statutory range of penalties." Ring, 153 L.Ed 2d at 571. This is so because Torres could not have been sentenced to **188** months "'unless the trial judge found [the subject] enumerated aggravating factors[,] [and] [a]bsent such a finding, the maximum potential punishment provided by law was [**16** months].'" Ring, 153 L.Ed 2d at 572, quoting Jones v. United States, 526 U.S. at 272 (1999) (Kennedy, **J.**, dissenting). In other words, "[w]ithout th[ose] critical finding[s], id., at 153 L.Ed 2d at 568, a sentence of 188 months "may not legally be imposed." Id., at 153 L.Ed 2d at 569.  See, 18 U.S.C. § 3742, providing for reversible error where the district court fails to apply the guidelines appropriately.  "[T]he Sentencing Guidelines are themselves a constitutional mechanism for channeling the discretion that a sentencing court would otherwise enjoy [...]." Mack, supra, 229 F.3d, at 244, citing Mistretta, supra, 109 S.Ct. 647.

Insofar as the above referenced aggravating factors, namely, §2D1.1 and § 3B1.1, are tied to a legally mandated increase in the range of punishments, "the Sixth Amendment requires that they be found by a jury." Ring, 153 L.ed 2d at 577. The argument Torres urges on the Court has not gone without earlier consideration; although, with reference to a different statute. In U.S. v. Buckland,

259 F.3d 1157 (9th Cir.2001), the Court of Appeals for the Ninth Circuit held that the determinate sentencing provisions of 21 U.S.C. § 841(b)(1)(A) & (B) were unconstitutional in light of Apprendi. Id. The Court acknowledged that in one of its earlier decisions, United States v. Norby, 225 F.3d 1053, 1058 (9th Cir. 2000), it was held that, "§ 841 was not susceptible to an interpretation other than that Congress intended drug quantity to be a sentencing factor, not an element of the offense under § 841." Buckland, 259 F.3d, at 1163. Under the circumstance, the Court concluded that "we could give no construction to the statute before us that would avoid the constitutional issue raised by Apprendi." Id., at 259 F.3d, at 1161. "Applying Apprendi to the statute as interpreted by Norby, we cannot avoid the conclusion that Apprendi renders §§ 841(b)(1)(A) and (B) unconstitutional because they permit the judge to find a fact, ... under the preponderance of the evidence standard, that increase the maximum penalty to which a defendant is exposed." Buckland, 259 F.3d, at 1163.

Because of the obvious implications of the Buckland decision, the Ninth Circuit Court of Appeals requested en banc consideration of the new ruling. On rehearing en banc, the Court of Appeals, reversed the decision in 259 F.3d 1157, holding that, "penalty provisions of federal drug statute are not facially violative of [the] due process clause under Apprendi." U.S. v. Buckland, 289 F.3d 558, 559 (9th Cir.2002)(en banc panel). In reaching that conclusion, the en banc panel intimated that its decision was animated "for what [§ 841] does not say." Id., at 289 F.3d, at 565. In their view, "[t]he statute does not specify who shall determine drug quantity or identify the appropriate burden of proof for th[ose] determinations." Id. The Court went on to cite U.S. v. Brough,

243 F.3d at 1079 (7th Cir.2001), and United States v. Cernobyl, 255 F.3d 1215, 1219 (10th Cir.2001), in support of the proposition that the § 841 statute is silent as to what party bears the burden of persuasion.

In U.S. v. McAllister, 272 F.3d 228, 233 (4th Cir.2001), the Court disagreed with Buckland I, that Congress plainly intended that drug quantity would be a sentencing factor rather than an element of the offense defined in § 841. Id. The Court asserted that Buckland I's reasoning was flawed because in their view, "it fails to recognize the difference between permitting the sentencing judge to determine drug quantity—by remaining silent regarding what procedures should be employed to determine drug quantity—and **requiring** that drug quantity be determined by the sentencing judge." Id., at 272 F.3d, at 233. The McAllister Court went on to conclude that merely because the statute is silent in this regard, it survives constitutional annulment. Id. Buckland II, reached a similar conclusion based on the statutes silence. In support of this view, the Buckland II Court cited United States v. Evans, 333 U.S. 483 (1948), where the Supreme Court declined to construe a statute to include a missing objective because it was uncertain how Congress would have drafted the relevant provisions. Id., at 289 F.3d, at 566. "To [plug the alleged hole in the statute] would be to go very far indeed, upon the sheer wording of the section." Buckland II, 289 F.3d, at 566, quoting Evans, 333 U.S. at 488. Under these circumstances, the Court concluded that because of the statute's silence, "Congress simply did not purposely 'remove from the jury the assessment of facts [necessary to] increase the prescribed range of penalties to which a criminal' defendant is exposed." Id., at 289 F.3d, at 566-67, quoting Apprendi, 530 U.S.

23

at 490 (quoting Jones v. United States, 119 S.Ct. 1215 (1999))(internal quotation marks omitted).

This premise is, however, foreclosed when viewing the aggravating factors under the guise of the Guidelines themselves which specifically command the courts to find the existence of the fact that an aggravating factor exists. See, Chandler, supra, 125 F.3d, at 897 ( "[T]he court makes any appropriate adjustments, authorized by Chapter Three, based on, inter alia, ... the defendant's role in the offense").

Viewed through the lens of the separate opinions of Justices Scalia, Thomas, O'Connor, and Breyer, in Apprendi, the continued validity of the Guidelines is squarely upon its death knell. In Justice Thomas' view, where a fact alters the range of punishment to which a defendant is exposed, it must be found by a jury. This Justice Thomas acknowledged might invalidate the Guidelines alone. See, Apprendi, 120 S.Ct. at 2380 n.11. Justice Scalia'a concurrence maintained that "all facts which must exist in order to subject the defendant to a legally prescribed punishment must be found by the jury." Id., at 2367. Justice O'Connor's dissent expressed concern that the Court's holding "will have the effect of invalidating significant sentencing reform accomplished over the past three decades." Id., at 2394. And Justice Breyer, a key figure in the development of the Sentencing Guidelines, lamented that "the rationale that underlies the Court's rule suggests a principle ... that, unless restricted, threatens the workability of every criminal justice system (if applied to judges) or threatens efforts to make those systems more uniform, hence more fair (if applied to [sentencing] commissions." Id., at 2402. Notably, the majority responded to these allegations sim-

ply by noting that "[t]he Guidelines are, of course, not before the Court. We therefore express no view on the subject beyond what this Court has already held." Mack, supra, 229 F.3d, at 237, quoting Apprendi, 120 S.Ct. at 2366 n.21 (internal quotation marks omitted). The aforementioned fears of the Justices are clearly reinforced in the wake of Ring.

In sum, Torres's maximum exposure to punishment according to the facts reflected in the jury's guilty verdict is 16 months. And because the Sentencing Guidelines require a sentencing judge, sitting without a jury, to find the existence of the fact that an aggravating factor exists, that ultimately "expose[d] [Torres] to a greater punishment than that authorized by the jury's guilty verdict," id. at 153 L.Ed 2d at 573, the United States Sentencing Guidelines are facially unconstitutional.

"If [Torres] preferred the common-sense judgement of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it." Ring, 153 L.Ed 2d at 577, quoting Duncan v. Louisiana, 391 U.S. at 155-56 (internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons the Petitioner respectfully request that the instant Motion be granted.

Respectfully Submitted,

Louis Martinez-Torres