UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

LUIS MARTINEZ-TORRES,    )
        Petitioner    )
                  )    CIVIL ACTION
      v.             )    NO. 04-40026-NMG
                  )
UNITED STATES OF AMERICA,    )
        Respondent    )
                  )

### Government's Memorandum In Opposition To Petitioner's Motion Under 28 U.S.C. §2255

### Introduction

The United States of America, by Michael J. Sullivan, United States Attorney, and David Hennessy, Assistant U.S. Attorney, for the District of Massachusetts, hereby files this memorandum in opposition to the petitioner's motion under 28 U.S.C. §2255. Petitioner, Luis Martinez-Torres (hereafter, "petitioner") has filed a petition seeking to vacate or set aside the sentence that this Court imposed on October 4, 2001, on the following grounds: (1) sentencing pursuant to the United States Sentencing Guidelines ("USSG") violated petitioner's Sixth Amendment right to a jury trial; and (2) the Sentencing Guidelines are unconstitutional in light of Ring v. Arizona, 536 U.S. 584 (2002). Because petitioner's claims are procedurally barred or meritless, the petition should be dismissed.

### Facts And Prior Proceedings

On January 3, 2001, petitioner was charged in a Superseding Indictment with conspiring during the period October 20, 1999

through December 8, 1999 with four other individuals, to distribute

5 grams or more of crack cocaine, in violation of 21 U.S.C. §846 (

Count One), and with possessing with intent to distribute crack

cocaine and distributing crack cocaine in violation of 21 U.S.C.

§841(a)(1) (Count Three). PSR ¶¶ 4-6.[1]

On June 6, 2001, petitioner pleaded guilty to both charges,

without an agreement.   PSR ¶¶ 7, 10.   On October 4, 2001,

petitioner was sentenced to 188 months' imprisonment.   Tr. of

Disposition at 30 (Exhibit 2 hereto).  His conviction was affirmed

on appeal.

### STATEMENT OF RELEVANT FACTS

### 1.   Offense Conduct

Petitioner's arrest stemmed from an investigation by the Drug

Enforcement Administration ("DEA") into the distribution of crack

cocaine in Fitchburg, Massachusetts, in Fall of 1999.   At that

time, DEA undercover agents bought crack cocaine from petitioner

and his co-conspirators.  PSR, ¶¶12 - 22.

### October 20, 1999

On October 20, 1999, a DEA agent working undercover ("UC") was

purchasing crack cocaine at 160 Laurel Street.   While there, co-

defendant Anthony Castro told the UC that Castro would take the UC

to another location where the UC could buy crack cocaine at a

---

[1]Except as noted, the facts are taken from the Presentence
Report ("PSR").

better price.

Castro brought the UC to 27 Payson Street in Fitchburg. They went to the second floor apartment and met co-defendants Reinaldo Egipciaco and Wandy Henriquez-Rodriguez. Castro spoke with them and then asked the UC how much he wanted. The UC negotiated the purchase of 5 pieces of crack cocaine for $100. A third unidentified male handed the UC the crack and the UC paid the male. The substance was submitted to the DEA lab and determined to contain cocaine base with a net weight of 1.4 grams. PSR ¶¶ 12-13.

**October 22, 1999**

On October 22, 1999, the UC returned to the second floor apartment at 27 Payson where he met petitioner and Henriquez-Rodriguez in the kitchen. Then two more males came in. One who looked like petitioner ("Look-alike") and another wore gold chains ("Gold Chains"). Petitioner left and returned with Egipciaco. The UC spoke with Egipciaco about purchasing crack cocaine. Egipciaco told the UC to return in an hour. Before leaving, the UC purchased five pieces of crack cocaine from Look-alike. The UC then negotiated with petitioner through Egipciaco to return and buy an ounce of crack cocaine for $550.

The UC returned to 27 Payson four times over the next several hours. The first time the UC returned, he spoke with Egipciaco and Henriquez-Rodriguez. Egipciaco told the UC to return later, and Henriquez-Rodriguez told UC repeatedly "good" which UC understood

3

to mean that the crack was going to be good quality.

The last time the UC returned to 27 Payson later, the UC met with Look Alike and Gold Chains. The UC transacted a purchase with them. He paid Gold Chains $550. Gold chains counted the money. Look Alike delivered a plastic bag contained what appeared to be crack cocaine.

The five pieces of alleged crack cocaine the UC purchased on his first visit on October 22, 1999 were submitted to the DEA lab and determined to contain cocaine base with a net weight of 1.5 grams. The contents of the plastic bag the UC purchased on the last visit were submitted to the DEA lab and determined to contain cocaine base with a net weight of 12.4 grams. PSR ¶¶14-16.

### October 28, 1999 Attempt Purchase of Cocaine Base

On October 28, 1999, the UC returned to 27 Payson Street where he met petitioner, Henriquez-Rodriguez, Egipciaco and others. The UC attempted to purchase an ounce of crack cocaine. However, petitioner and others were suspicious that the UC was in fact a police officer. They asked him to smoke crack to prove that he was not. The UC refused and ultimately, when the UC failed to allay their concerns, no purchase was made. PSR ¶ 17.

### December 9, 1999 Search Warrant and Arrest

On December 9, 1999, agents executed a search warrant at 27 Payson Street. Inside the apartment they arrested petitioner, Henriquez-Rodriguez and others. Agents recovered four bags of a

4

rock-like substance.   The substance was submitted to the DEA lab and determined to contain cocaine, not cocaine base, with a net weight of 3.3 grams.   PSR ¶ 18.

### Egipciaco and Henriquez-Rodriguez Proffers

Both Egipciaco and Henriquez-Rodriguez cooperated.   According to Egipciaco, petitioner leased 27 Payson Street under the name Luis Rodriguez, invited Egipciaco to live at 27 Payson Street and offered Egipciaco crack cocaine and heroin in exchange for Egipciaco's services as a translator for non-Spanish speaking customers.   PSR ¶ 19.

Egipciaco identified petitioner and Henriquez-Rodriguez as being in charge of 27 Payson Street.   Egipciaco stated that petitioner and Henriquez-Rodriguez owned the drugs sold there.   He said they routinely kept 20 to 30 twenty dollar pieces of crack cocaine and one bundle of ten bags of heroin in the apartment at one time, and that they would get more of each narcotic when the supply was sold.   Egipciaco believed that petitioner and Henriquez-Martinez stored crack cocaine and heroin at another apartment.   He estimated that they sold approximately 50 to 75 $20 pieces of crack cocaine and six to ten bundles of heroin, per day from 27 Payson, and operated six days per week.

Henriquez-Rodriguez concurred in these estimates and admitted that he was in charge when petitioner was away.   Based on these estimates, petitioner was accountable for more than 1.5 kilograms

5

of crack cocaine and 1 kilogram of heroin.  PSR ¶¶ 19-22.

### 2.    Petitioner's interview with pretrial services.

Petitioner's true name is Edward Jimenez Coplin.   PSR ¶ 43. He failed to provide his true name to the U.S. Magistrate Judge and Pretrial Services.  PSR ¶ 2.

### 3.    Petitioner's change of plea.

On June 6, 2001, petitioner appeared before this Court and pleaded guilty to Counts One and Three of the Superseding Indictment.  PSR ¶ 7.  Petitioner pleaded guilty on a Friday before the Monday on which trial was to commence.  See Tr. of Disposition at 9.  There was no plea agreement.  PSR ¶ 10.    Petitioner's plea exposed him to a mandatory minimum sentence of five years' imprisonment and a maximum of 40 years' imprisonment.  PSR ¶ 95.[2]

### 4.    Petitioner's Sentencing

At sentencing, the Court heard argument on the quantity of drugs for which petitioner was accountable and a number of adjustments.  Disposition at 8-26, Ex.2.  The Court found, based on

---

[2]The PSR erroneously links penalties with charges.  Count 1, which alleged the conspiracy to distribute more than 5 grams of crack, carried a mandatory minimum sentence of 5 years.  The PSR erroneously attributes this penalty to Count 3, which alleged no quantity and carried no mandatory minimum.  In his memorandum in support of this § 2255 motion, petitioner erroneously reports that the Superseding Indictment did not allege a quantity of narcotics and that petitioner was exposed to a maximum sentence of 20 years, and no mandatory minimum.  See Memorandum at 6, 8, 19 and 25.  As the transcripts of petitioner's plea and disposition show, petitioner pleaded to conspiring to sell more than 5 grams of crack cocaine, exposing him to 5 to 40 years' incarceration.

the proffered statements of Egipciaco and Henriquez-Rodriguez, that petitioner was accountable for the equivalent of approximately 13,000 kilograms of marijuana and that the base offense level was therefore 36.  Id. at 25.  The Court also found that because petitioner was an organizer and leader, he should receive a two-level aggravating role adjustment.  Id.  The Court did not assess petitioner an adjustment for obstruction of justice.  Id. at 26. It awarded petitioner a two-level adjustment for acceptance of responsibility, making petitioner's total offense level 36.  Id. at 26.  The Court sentenced petitioner to 188 months' imprisonment, the bottom of the applicable guideline range.  Id. at 30.

### 5.  **Petitioner's Appeal**

Petitioner appealed.  His attorney filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), representing that, in counsel's view, there was no non-frivolous issue for appellate review.  Petitioner filed a pro se brief, alleging that under Ring v. Arizona, 536 U.S. 584 (2002), his due process rights and Sixth Amendment right to a jury trial were violated when the District Court made findings of fact that increased petitioner's sentence beyond the facts reflected in petitioner's guilty plea.[3]  On December 19, 2002, the Court of Appeals summarily affirmed the

---

[3]Petitioner's pro se brief alleges that these constitutional violations occurred because sentencing was not based on the jury verdict.  However, because petitioner pleaded guilty, there was no jury verdict.

judgment of the District Court, finding "there was no basis for appeal." See Judgment annexed hereto as Ex.3.  Petitioner moved for panel rehearing. On March 3, 2003, the Court of Appeals denied this motion, noting that the entire record, including petitioner's *pro se* submission, revealed no non-frivolous basis for appeal. See March 3, 2003 Order annexed hereto as Ex.4.   In August 2003, petitioner asked for a writ of certiorari, which the Court denied on October 6, 2003.   Martinez Torres v. United States, 124 S.Ct. 358 (2003).

## Argument

Petitioner seeks here to re-litigate the very claims he made on appeal, that: (1) his Sixth Amendment right to a jury trial was abridged because he was sentenced based upon findings of fact made by the District Court, and not based upon the facts to which he pleaded guilty; (2) the judge-made findings of fact which increased the Guideline range constructively amended the indictment insofar as the factors on which the Court relied to increase the Guideline range were, in reality, elements of an aggravated crime not charged in the Indictment; and (3) the United States Sentencing Guidelines are unconstitutional in light of Ring v. Arizona.   Because petitioner's claims were raised in the Court of Appeals and decided, this Court should refuse to allow petitioner to relitigate them in this Section 2255 motion.  However, even if the Court were to entertain petitioner's claims, they are contrary to the

8

decisions of the Supreme Court, and should be dismissed.

## I.   The Current State of the Law

Petitioner was sentenced pursuant to the U.S. Sentencing Guidelines which, for more than fifteen years, have governed sentences imposed for violations of federal criminal statutes, including Title 21 controlled substances offenses.  Before turning to both the procedural and substantive grounds that defeat petitioner's challenge to this longstanding regime, it is worth briefly reviewing recent case law regarding the scope of a judge's authority to impose sentence.

To date, there have been three Supreme Court decisions that have addressed the issue of a judge's authority to impose a sentence.  None has held that the U.S. Sentencing Guidelines are unconstitutional.  The first, Apprendi v. New Jersey, 530 U.S. 466 (2000), struck down a New Jersey sentencing statute that allowed a judge to enhance a defendant's sentence based on the judge's finding that the crime was committed with racial animus.  Apprendi held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Id. at 490.  The Court reasoned that the Due Process Clause and the Sixth Amendment's right to trial by jury "indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is

9

charged beyond a reasonable doubt.'" Id. at 477. The Court also
noted that labeling something as a sentencing factor rather than an
element is not dispositive of whether it must be proved to a jury
beyond a reasonable doubt:

> When the term 'sentence enhancement' is used to describe an
> increase beyond the maximum authorized sentence, it is the
> functional equivalent of an element of a greater offense than
> the one covered by the jury's guilty verdict and therefore
> must be submitted to the jury.

Id. at 494 n.19.

The majority in Apprendi explicitly reserved the question of
the impact of its ruling on the U.S. Sentencing Guidelines, noting,
"[t]he Guidelines are, of course, not before the Court. We
therefore express no view on the subject beyond what this Court has
already held." Id. at 494 n.21.

The next Supreme Court decision to raise a question about the
authority of judges to impose sentence is the decision on which
petitioner relies principally in his motion, Ring v. Arizona, 536
U.S. 584 (2002). There, a jury convicted defendant of first-degree
murder. Under Arizona law, following a jury adjudication of a
defendant's guilt of first-degree murder, the trial judge, sitting
alone, determines the presence or absence of the aggravating
factors required by Arizona law for imposition of the death
penalty. The Court struck down the Arizona statute based on its
reasoning in Apprendi:

> If a State makes an increase in a defendant's authorized
> punishment contingent on the finding of a fact, that fact – no

10

matter how the State labels it – must by found by a jury
beyond a reasonable doubt . . . A defendant may not be
'expose[d] . . . to a penalty *exceeding* the maximum he would
receive if punished according to the facts reflected in the
jury verdict alone.

Ring v. Arizona, 536 U.S. at 602.  The Court held that "[b]ecause

Arizona's enumerated aggravating factors operate as the 'functional

equivalent of an element of a greater offense,'. . . the Sixth

Amendment requires that they be found by a jury." Id. at 609.

The third Supreme Court decision was decided after the instant

petition was brought, just weeks ago, Blakely v. Washington, 2004

WL 1402697 (June 24, 2004).  Blakely had pleaded guilty to

kidnaping, which carried a ten-year statutory maximum and, under

the Washington State determinate sentencing guideline scheme, a

maximum sentence of 53 months.  Under the Washington sentencing

scheme, the judge could impose a sentence above the guideline

maximum if he found "substantial and compelling reasons justifying

an exceptional sentence." Id. at *2.  The trial judge determined

that Blakely had acted with "'deliberate cruelty,' a statutorily

enumerated ground for departure," and enhanced his sentence to 90

months.  Blakely appealed, claiming that the enhancement violated

his right to a jury trial, as set forth in Apprendi.

A five-to-four majority of the Court agreed with Blakely.

After discussing Apprendi and Ring, the Court said, "[i]n each

case, we concluded that the defendant's constitutional rights had

been violated because the judge had imposed a sentence greater than

the maximum he could have imposed under state law without the
challenged factual finding." <u>Blakely</u>, 2004 WL 1402697 at *4.
Washington State argued that <u>Apprendi</u> was inapposite because the
statutory maximum for kidnaping was 10 years and the judge's
findings did not increase the sentence above that maximum.   The
Court rejected this argument, stating:

> Our precedents make clear . . . that the "statutory maximum"
> for <u>Apprendi</u> purposes is the maximum sentence a judge may
> impose *solely on the basis of the facts reflected in the jury
> verdict or admitted by the defendant.* . . . In other words,
> the relevant "statutory maximum" is not the maximum sentence
> a judge may impose after finding additional facts, but the
> maximum he may impose *without* any additional findings.   When
> a judge inflicts punishment that the jury's verdict alone does
> not allow, the jury has not found all the facts which the law
> makes essential to the punishment . . . and the judge exceeds
> his proper authority.

<u>Id</u>. (emphasis in original).

As it had it <u>Apprendi</u>, the Court noted "[t]he Federal
Guidelines are not before us, and we express no opinion on them."
<u>Id</u>. at *6 n.9.    Against this backdrop, we address the
procedural and substantive flaws in petitioner's claims.

## II.      **Petitioner's claim was decided on appeal and he is not free to re-litigate it on a § 2255 Petition.**

This Court should dismiss the instant petition because it
advances claims that were raised in the Court of Appeals and
rejected.   Under well-settled principles of <u>habeas</u> jurisprudence,
petitioner cannot use the extraordinary remedy of <u>habeas</u> relief to
ask a federal court to second-guess itself.

In <u>Withrow v. Williams</u>, 507 U.S. 680 (1993), which held that

12

federal habeas jurisdiction extended to a <u>Miranda</u> claim by a state

prisoner, Justice Scalia recounted in a concurring opinion the rule

limiting <u>habeas</u> review of <u>federal</u> convictions under Section 2255:

> In <u>Kaufman v. United States</u>, 394 U.S. 217 (1969) . . . we
> stated that a district court had "discretion" to refuse to
> reach the merits of a constitutional claim that had already
> been raised and resolved against the prisoner at trial and on
> direct review. Since <u>Kaufman</u>, federal courts have uniformly
> held that, absent countervailing considerations, district
> courts may refuse to reach the merits of a constitutional
> claim previously raised and rejected on direct appeal.

<u>Withrow</u>, 507 U.S. at 720-21 (citations omitted); <u>see</u> <u>Argencourt v.</u>

<u>United States</u>, 78 F.3d 14, 16 n.1 (1st Cir. 1996) (petitioner not

free to litigate ineffective assistance of counsel claim regarding

examination of a witness because it was raised on appeal and

decided against him).

    This case falls within the prohibition of <u>Kaufman</u>. Petitioner

had a full and fair opportunity to litigate his constitutional

claims in the Court of Appeals, and he did so, and he lost. In his

*pro se* brief in the Court of Appeals,[4] petitioner made two

arguments: (1) petitioner's Sixth Amendment right to a jury trial

was denied where he was exposed to a penalty based not on his

guilty plea, but on facts found by the District Court; and (2) that

the judge-made findings of fact which increased the Guideline range

constructively amended the indictment insofar as the factors on

---

[4] His counsel had filed a brief pursuant to <u>Anders v.</u>
<u>California</u>, 386 U.S. 738 (1976), representing that there was no
non-frivolous issue for appellate review.

which the Court relied to increase the Guideline range were, in reality, elements of an aggravated crime not charged in the Indictment; and (3) that the U.S. Sentencing Guidelines are unconstitutional in light of <u>Ring</u>. As to each claim, petitioner relied principally on <u>Ring</u>. The Court of Appeals expressly rejected petitioner's appellate arguments, noting it had reviewed the entire record, including petitioner's *pro se* brief, and determined that there was no basis for appeal or rehearing. <u>See United States v. Luis Martinez Torres</u>, 01-2526 (March 3, 2003 Order)(Ex.4).

These three appellate arguments, and the case on which they rely, <u>Ring v. Arizona</u>, are precisely the arguments advanced in this petition. In fact, petitioner's memorandum in support of the instant petition is virtually a verbatim reproduction of the second of his appellate briefs.[5]  A comparison shows that pages 2-25 of the instant memorandum and petitioner's second appellate brief are photocopies. Where, as here, the constitutional claims were raised and rejected on direct review, this Court should exercise its discretion and not second-guess the Court of Appeals.

_____

[5] Petitioner filed two *pro se* appellate briefs, each dated after <u>Ring</u> was decided, June 24, 2002. Each brief contains petitioner's claims that his Sixth Amendment right to a jury trial was violated. The first appellate brief also contains a Due Process clause claim, based largely on <u>Ring</u>; the second appellate brief contains the additional claim that the U.S. Sentencing Guidelines are unconstitutional after <u>Ring</u>.

14

**III. Petitioner's claims are contrary to Supreme Court jurisprudence and should be denied on the merits.**

Even if this Court were to entertain petitioner's claims that his Sixth Amendment right to a jury trial were violated, that the Court constructively amended the indictment, and that in light of Ring, the U.S. Sentencing Guidelines are unconstitutional, the petition must nevertheless be dismissed because these claims are without merit.

**A.   Apprendi and petitioner's claims**

In his memorandum in support of this Section 2255 motion, petitioner emphasizes that his claims are not based upon Apprendi, see Memorandum at 3-5, and it is clear Apprendi supports neither the alleged violation of Sixth Amendment right to a jury trial and Fifth Amendment right to indictment by the Grand Jury, nor the challenge to the constitutionality of the U.S. Sentencing Guidelines.   On its face, Apprendi requires submission of fact-finding to a jury only where the fact increases the penalty for a crime beyond the statutory maximum.   Because petitioner pleaded guilty to conspiring to distribute more than five grams of cocaine base, see Tr. of Plea at 12-14 (Ex.1), the District Court was authorized to sentence petitioner up to forty years' incarceration (with a mandatory minimum of five years' incarceration, not at issue in the petition).     See 21 U.S.C. § 841(b)(1)(B). Petitioner's sentence of 188 months is well within this range, and hence there was no Apprendi violation.   In addition, there was no

15

constructive amendment of the indictment because petitioner was sentenced pursuant to an offense found by the grand jury.

As to petitioner's challenge to the Guidelines, Apprendi again offers no help.  Apprendi did not hold that the Guidelines were unconstitutional.   To the contrary, the Court noted that the Guidelines were not before them in Apprendi, and expressed no view on them.

## B.  **Blakely and petitioner's claims**

Blakely also does not support petitioner's claims.  First, Blakely constitutes a "new constitutional rule of criminal procedure," which is not retroactively applicable to cases that became final before the decision was announced.  Second, even if it were retroactively applicable, Blakely does not apply to the U.S. Sentencing Guidelines, and hence to petitioner's sentence in this case.

### 1.  Blakely is not retroactively applicable

Blakely announced a principle that constitutes a "new constitutional rule of criminal procedure," which, under Teague v. Lane, 489 U.S. 288 (1989), is not retroactively applicable to cases that became final before Blakely was announced.[6]  This is shown by

---

[6]In Justice O'Connor's dissenting opinion in Blakely, she suggested that Blakely might be viewed as merely an application of the rule announced in Apprendi, with the result that "all criminal sentences imposed under the federal * * * guidelines since Apprendi was decided in 2000 arguably remain open to collateral attack."  2004 WL 1402697, at *16 (O'Connor, J., dissenting).  However, the Supreme Court has defined a "new rule"

16

Schriro v. Summerlin, 2004 WL 1402732 (June 24, 2004), decided the
same day as Blakely. In Summerlin, the Court considered whether
Ring v. Arizona applied retroactively to cases that had already
become final when Ring was decided. As noted above, Ring held that
because Arizona law authorized the death penalty only if an
aggravating factor was present, Apprendi required the existence of
such a factor to be proved to a jury rather than to a judge.
Summerlin's conviction and death sentence, which was imposed under
the same Arizona law that was at issue in Ring, had become final
long before Ring was decided.

    The Supreme Court held that "Ring announced a new procedural
rule that does not apply retroactively to cases already final on
direct review." 2004 WL 1402732, at *7. The Court explained that
a "new rule" resulting from one of its decisions applies to
convictions that are already final only in limited circumstances.
New substantive rules generally apply retroactively, but new
procedural rules generally do not - only "'watershed rules of
criminal procedure' implicating the fundamental fairness and
accuracy of the criminal proceeding' are given retroactive effect.

---

under Teague as one that was not "'dictated by precedent existing
at the time the defendant's conviction became final.'" Graham v.
Collins, 506 U.S. 461, 467 (1993) (quoting Teague, 489 U.S. at
301 (emphasis in Teague)); see Sawyer v. Smith, 497 U.S. 227, 234
(1990). Subsequent decisions have made clear that a rule may be
"new" despite the fact that earlier cases supported it, Sawyer v.
Smith, 497 U.S. at 236, "or even control or govern" it, Saffle v.
Parks, 494 U.S. 484, 491 (1990).

17

Id. at *3.  The Court concluded in Summerlin that Ring's holding is
properly classified as procedural, rather than substantive, since
it did not alter the range of conduct or the class of persons
subject to the death penalty in Arizona; instead, it merely changed
the method of determining whether the defendant engaged in that
conduct.  Id. at *4.

The Court also held that Ring did not fall within Teague's
narrow exception for "watershed rules" of criminal procedure.  To
qualify as a watershed rule, the Court explained, a new procedural
rule must be one "without which the likelihood of an accurate
conviction is seriously diminished."  The Court held that Ring did
not announce a watershed rule of criminal procedure because it
could not confidently say that judicial fact-finding seriously
diminishes the accuracy of capital sentencing proceedings.  Id. at
*4-*5.

Consistent with the reasoning of Summerlin, courts of appeals
have held that because Apprendi is a procedural rule that does not
fall within the "watershed" exception, it is not retroactively
applicable to cases on collateral review.  See, e.g., Sepulveda v.
United States, 330 F.3d 55 (1ˢᵗ Cir. 2003); Coleman v. United
States, 329 F.3d 77 (2d Cir. 2003).

A fortiori, Blakely is necessarily a new procedural rule which
does not fall within the so-called "watershed" exception, and hence
is not retroactively applicable to the instant collateral attack on

18

a conviction.  <u>Blakely</u>, as that opinion shows, applied rules

announced in <u>Apprendi</u> and <u>Ring</u>.  Since those decisions did not

announce new substantive rules or procedural rules that fall within

the "watershed" exception, then it follows that neither did

<u>Blakely</u>.  See <u>In re: Will C. Dean</u>, 2004 WL 1534788 at 2-3 (11th Cir.

July 9, 2004)("Because <u>Blakely</u>, like <u>Ring</u>, is based on an extension

of <u>Apprendi</u>, [petitioner] cannot show that the Supreme Court has

made that decision retroactive to cases already final on direct

review.").

Here, petitioner's conviction became final on October 6, 2003,

when the Supreme Court denied the petition for a writ of

certiorari.  See <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321 n.6

(1987)(citing cases) (judgment is final when *certiorari* is denied

or time for filing a petition for *certiorari* expires).

Accordingly, <u>Blakely</u> is not retroactively applicable to the

judgment in this case.

2.  <u>Blakely does not invalidate the Guidelines</u>

Even if <u>Blakely</u> were retroactively applicable to this case —

and it is not — the rule it announced does not support the claims

raised in the instant petition.

First, it is clear that <u>Blakely</u> did not invalidate the U.S.

Sentencing Guidelines, nor did the <u>Blakely</u> Court hold that its rule

applies to the Guidelines.  See 2004 WL 142697, at *6 n.9 ("[t]he

Federal Guidelines are not before us, and we express no opinion on

19

them"); see also Apprendi, 530 U.S. at 497 n.21 (same). Indeed, in Apprendi itself, the Court expressed no view on the Guidelines beyond "what this Court has already held." Ibid. (citing Edwards v. United States, 523 U.S. 511, 515 (1998)).

What the Court has "already held" about the Guidelines therefore continues to provide the governing principle for this Court -- and Supreme Court rulings have consistently upheld the Guidelines against constitutional attack and underscored their unique status within our constitutional scheme. See, e.g., Mistretta v. United States, 488 U.S. 361 (1989). Indeed, the Court has found that so long as a sentence does not exceed the statutory maximums established by Congress for the offense of conviction, a Guidelines sentence can (in fact, sometimes must) be based on judge-found conduct not proved to a jury, see Edwards v. United States, 523 U.S. 511, 514-15 (1998); conduct not charged in the indictment, see Witte v. United States, 515 U.S. 389, 399-401 (1995); and conduct of which a defendant is acquitted but is established by a preponderance of the evidence. See United States v. Watts, 519 U.S. 148, 156-57 (1997) (per curiam).

Moreover, the Court has explicitly held that lower courts are bound not only by the Guidelines, but by their policy statements and commentary as well. Stinson v. United States, 508 U.S. 36, 42 (1993).

This Court is required to follow these precedents. See State

20