Oil Co. v. Khan, 522 U.S. 3, 20 (1997) ("it is [the Supreme Court's] prerogative alone to overrule one of its precedents"); Agostini v. Felton, 521 U.S. 203, 237 (1997) (courts of appeals must leave to "this Court the prerogative of overruling its own decisions," even if such a decision "appears to rest on reasons rejected in some other line of decisions") (quotations, citations omitted). Indeed, the courts have recognized that they are obliged to follow Supreme Court precedent, even when that precedent may appear to be undermined by subsequent Supreme Court decisions. See, e.g., Figueroa v. Rivera, 147 F.3d 77, 81 (1st Cir. 1998) (noting that the Supreme Court has "admonished the lower federal courts to follow its directly applicable precedent, even if that precedent appears weakened by pronouncements in its subsequent decisions"); Perez v. Greiner, 296 F.3d 123, 125 n.4 (2d Cir. 2002) ("where a Supreme Court precedent appears to have been reversed by implication, lower courts should continue to follow the case that directly controls, and leave to the Supreme Court the prerogative of overruling its own decisions) (citations and internal quotation marks and alterations omitted).

Applying these principles of *stare decisis*, it is clear that as a substantive matter, Blakely, even if found to be retroactively applicable to the instant petition, expressly does not support petitioner's challenge to the constitutionality of the U.S. Sentencing Guidelines, and leaves intact the controlling and

persuasive case law that holds that the Guidelines are constitutional.

3. <u>Blakely does not support petitioner's Jury Trial Claim</u>

By the same token, <u>Blakely</u> does not support petitioner's claim that the process by which the District Court made findings and increased the applicable Guideline range violated petitioner's Sixth Amendment right to a jury trial or constructively amended the indictment to charge an aggravating crime. The reason is that unlike the Washington State sentencing scheme at issue in <u>Blakely</u>, the U.S. Sentencing Guidelines are part of a larger system which fully vindicates the Fifth and Sixth Amendment rights of defendants.

<u>Blakely</u> involved two Washington state statutes, one broad and one specific, that set forth various maximum penalties for criminal offenses. The first prescribes maximum sentences depending on whether a crime is a Class A felony (life maximum), Class B (ten years), or Class C (five years). Wash. Rev. Code § 9A.20.021(1). The second statute categorizes individual crimes by "seriousness level" which, along with an offender's criminal history score, yields a "presumptive sentencing range," which is set forth in the state code in the form of a sentencing grid. See Wash. Rev. Code § 9.94A.310(1) (Table 1) (now revised and codified at Wash. Rev. Code § 9.94A.510). The statute authorizes a court to impose a sentence above the presumptive range if it finds "substantial and

22

compelling reasons justifying an exceptional sentence." Blakely, 2002 WL 1402697, at * 2. The statute includes an illustrative, non-exhaustive list of possible aggravating factors justifying an exceptional sentence. 2004 WL 1402697, at * 2.

Blakely pleaded guilty to a Class B felony. The trial court did not sentence him to the presumptive range set by the statutory guidelines (49-53 months) for his crime, but imposed an "exceptional sentence" of 90 months based upon its finding that Blakely had acted with "deliberate cruelty" in committing the offense. 2004 WL 1402697, at * 3-4. Applying the rule of Apprendi -- that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," 530 U.S. at 490 -- and relying on Apprendi and Ring, the Court held that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 2004 WL 1402697, at * 4. Because "deliberate cruelty" was neither proved to a jury nor admitted by Blakely in his plea, the Court ruled that the enhanced sentence was unconstitutional. Id. at * 4, 6.

As in Apprendi and Ring, the legislative scheme in Blakely created two distinct statutory maximums. In Blakely, one very broadly classified (and provided broad maximum ranges for) offenses

23

as A, B, or C felonies, and the other provided crime-by-crime guidelines ranges, from which a judge could depart upward based on his or her own findings of aggravating factors. See 2004 WL 1402697, at * 2.

That is not how the U.S. Sentencing Guidelines operate. Congress has only created one set of statutory maximums for federal crimes. The Guidelines operate within those maximums, see Guidelines § 5G1.1, and set forth a host of factors (the current Manual runs some 491 pages) that courts are to consider, both in aggravation and mitigation, in individualizing a particular sentence. These factors correspond to those that judges have always taken into account -- such as the manner in which a crime was committed, the nature of the victim, the defendant's role in the offense, whether he obstructed justice at trial, and whether he accepted responsibility for his actions -- in fashioning sentences. Watts, 519 U.S. at 152.[7] As the Supreme Court has indicated, the U.S. Sentencing Guidelines were never intended to operate on the same footing as the statutory maximums. Indeed, that very assumption sits at the heart of the Guidelines: "they do not bind or regulate the primary conduct of the public or . . . establish[]

---

[7] Indeed, in formulating the Guidelines, the Commission canvassed prior sentencing practice and attempted to identify and to assign weights to all the factors that judges traditionally used in determining appropriate sentences. See United States Sentencing Commission, Supplementary Report on the Initial Sentencing Guidelines and Policy Statements 16-17 (1987).

24

minimum and maximum penalties for every crime. They do no more than fetter the discretion of sentencing judges to do what they have done for generations -- impose sentences within the broad limits established by Congress." Mistretta, 488 U.S. at 396.

Further, as Mistretta made clear, the Guidelines and the Sentencing Commission that promulgates them are constitutionally unique. The Commission is not a legislative body but an "independent commission in the judicial branch of the United States." 28 U.S.C. 991(a). In formulating the federal Guidelines, "the Commission enjoys significant discretion." Mistretta, 488 U.S. at 657. The Guidelines are not statutes but sentencing rules -- binding on sentencing courts by statute, see Mistretta, 488 U.S. at 367; Stinson, 508 U.S. at 42 (citing 18 U.S.C. § 3553(b)) -- but nevertheless the unique product of a special delegation of authority.

Mistretta recognized that the substance of Congress' delegation to the Commission was essentially nonlegislative in character. Like Congress' delegation of rulemaking authority to the judicial branch to prescribe rules of procedure and evidence, see, e.g., 28 U.S.C. 2072, the delegation to the Commission to make sentencing rules "simply leaves with the Judiciary what long has belonged to it." 488 U.S. at 396. Or, put another way:

> Prior to the [Sentencing Reform] Act, the Judicial Branch, as an aggregate, decided precisely the questions assigned to the Commission: what sentence is appropriate to what criminal conduct under what circumstances. It was the everyday

25

> business of judges . . . to evaluate and weigh the various aims of sentencing and to apply those aims to the individual cases that came before them. The Sentencing Commission does no more than this, albeit basically through the methodology of sentencing guidelines, rather than entirely individualized sentencing determinations.

488 U.S. at 395; id. at 391 ("Commission's functions . . . are clearly attendant to a central element of the historically acknowledged mission of the Judicial Branch"); see also United States v. Kinter, 235 F.3d 192, 201 (4th Cir. 2000) ("the Commission's act of establishing sentencing ranges in the Guidelines is categorically different from the legislative act of setting a maximum penalty in a substantive criminal statute").

Blakely, of course, did not rest on the fact that the Washington guidelines scheme was legislatively enacted. Nor, however, did it say that the source of the "statutory maximum" (whether congressional statute or commission guideline) for Apprendi purposes is immaterial. Imposing Apprendi's requirements only when the legislature has made a defendant's exposure to increased punishment contingent on findings of fact that the legislature itself specifies vindicates Apprendi's animating constitutional values. The Sixth Amendment right to trial by jury, and the due process right to insist on rigorous proof to establish guilt of an offense, are fully protected when there must be a jury finding beyond a reasonable doubt on the facts that establish the legislatively prescribed maximum punishment to which a defendant is exposed. Democratically-enacted statutes provide one of the most

26

basic contracts between a citizen and his or her government. Far more than the intricate, extensive, and many-layered determinations in the Guidelines manual, the U.S. Code tells the people of the United States what is and is not expected of them, and warns them of the ultimate consequences should they refuse to follow the rules. As Justice Scalia said in Apprendi:

> I think it not unfair to tell a prospective felon that if he commits his contemplated crime he is exposing himself to a jail sentence of 30 years -- and that if, upon conviction, he gets anything less than that he may thank the mercy of a tenderhearted judge. . . . Will there be disparities? Of course. But the criminal will never get _more_ punishment than he bargained for when he did the crime, and his guilt of the crime (and hence the length of the sentence to which he is exposed) will be determined beyond a reasonable doubt by the unanimous vote of 12 of his fellow citizens.

530 U.S. at 498 (Scalia, J., concurring) (emphasis in original); see also Harris v. United States, 536 U.S. 545, 562 (2002) ("[s]ince sentencing ranges came into use, defendants have not been able to predict from the face of the indictment precisely what their sentence will be; the charged facts have simply made them aware of the 'heaviest punishment' they face if convicted. Judges, in turn, have always considered uncharged 'aggravating circumstances' that, while increasing the defendant's punishment, have not swelled the penalty above what the law has provided for the acts charged.") (plurality opinion) (citations, internal quotation marks omitted).

In sum, the Supreme Court decisions before Blakely uniformly upheld the Guidelines system as written: a tightly integrated

27

system of sentencing rules for judges to apply based on their findings of fact. <u>Blakely</u> not only explicitly declined to express a view on the Federal Sentencing Guidelines, but there is nothing in the decision to support the claim that, as here, fact-finding by the District Court that leads to a sentence below the only statutory maximum, constructively amends an indictment or violates a defendant's Sixth Amendment right to a jury trial. This Court accordingly should continue to adhere to the law as it stands and deny both of petitioner's claims.

C.  <u>Ring</u> and petitioner's claims

<u>Ring</u> was decided on June 24, 2001. Unlike <u>Blakely</u>, it's holding is applicable to this collateral attack because petitioner's judgment did not become final until October 6, 2003.

However, for all the reasons discussed in Points 2 and 3 of Section B above, <u>Ring</u> does not support petitioner's alleged Fifth and Sixth Amendment violations or his constitutional challenge to the U.S. Sentencing Guidelines. <u>Ring</u> did not hold or otherwise find that the U.S. Sentencing Guidelines were unconstitutional. Moreover, decisions after <u>Ring</u>, including <u>Blakely</u>, implicitly show that <u>Ring</u> was never interpreted as finding that the procedures set forth in the U.S. Sentencing Guideline for determinations of factual disputes by a judge by a preponderance of the evidence abridged a defendant's Fifth Amendment right to indictment by a Grand Jury, or Sixth Amendment right to a jury trial.

But apart from the reasoning in points 2 and 3 of Section B, it must also be recognized that <u>Ring</u> is factually an inapposite case. <u>Ring</u> involved a statute that carried not one statutory maximum, but two: life imprisonment or death. If convicted by a jury of first-degree murder, under Arizona law a defendant could be sentenced to the former only, life imprisonment. A death sentence could not be imposed unless and until the trial judge, sitting alone, found the existence of aggravating circumstances required by Arizona law for imposition of the death penalty. Thus, the Court, quoting Justice O'Connor's dissent in <u>Apprendi</u>, noted:

> The Arizona first-degree murder statute "authorizes a maximum penalty of death only in a formal sense" . . . for it explicitly cross-references the statutory provision requiring the finding of an aggravating circumstance before imposition of the death penalty.

<u>Ring</u>, 536 U.S. at 604.

In the case of the federal criminal statutes and the U.S. Sentencing Guidelines, on the other hand, there is no double maximum, or cross-reference to an increase in punishment above the statutory maximum. Here, for instance, the District Court was absolutely bound by a statutory maximum of forty years that became applicable on the basis of petitioner's admission at his Rule 11 hearing to conspiring to distribute more than 5 grams of cocaine base. The Sentencing Guidelines, as discussed above, merely operated within that maximum, <u>see</u> Guidelines § 5G1.1, and set forth factors this Court was to consider, both in aggravation and

29

mitigation, in individualizing the particular sentence. Put another way, if petitioner were convicted by a jury of conspiring to sell more than 5 grams of crack cocaine, the verdict authorized a sentence of up to 40 years' incarceration. In Ring, the jury's verdict authorized a sentence of life imprisonment. Hence, Ring is entirely distinguishable, and its holding in no way changes the continued vitality of the U.S. Sentencing Guidelines or the harmony between the procedures the Guidelines prescribe for fact-finding by a judge by a preponderance of the evidence, and a defendant's Fifth Amendment right to indictment by a Grand Jury and his Sixth Amendment right to a jury trial.

## Conclusion

Based on the foregoing, the government respectfully requests that the Court dismiss Martinez-Torres' §2255 petition since it is either barred as a matter of law or the undisputed facts demonstrate that it is without merit.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: *David Hennessy*
David Hennessy
Assistant U.S. Attorney

DATED:   July 12, 2004.

## CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery:

    Luis Martinez-Torres
    Inmate No. 80208-038
    Gilmer FCI
    P.O. Box 5000
    Glenville, WV 26351

This 12th day of July 2004.

*/s/ David Hennessy*
David Hennessy
ASSISTANT UNITED STATES ATTORNEY